# CHARLESTON.

M. E. DURKIN DONOHOE *v.* FRONIA H. COLLETT *et al.*

Submitted October 26, 1920.   Decided November 23, 1920.

1.  FRAUDULENT CONVEYANCES—*Rule Requiring Proof of Consideration Inapplicable to Conveyance Made by Trustee Under Valid Deed of Trust.*

    The settled rule that neither the recital in a deed from a fraudulent or insolvent debtor, of payment of consideration, nor averment thereof in his answer or the answer of the grantee, or both, is evidence against an attacking creditor who is not a party to the deed, and the grantee, in order to sustain the conveyance to him, must clearly prove payment of a fair and adequate consideration, has no application in the case of a conveyance of a debtor's property even to a close relative of his, other than his wife, made by a trustee in pursuance of a sale thereof under a valid deed of trust.   (p. 388).

2.  SAME—*Burden of Proof Where Trustee Has Conveyed Debtor's Property Under Valid Deed of Trust Stated.*

    In such case, the ground of relief is that of a purchase by the grantee for the benefit of the fraudulent debtor or with money furnished by the latter for the purpose, and the issue as to it is an affirmative one, the burden of proof in which

rests upon the attaching creditor; and, the validity of the deed of trust having been established by proof and the allegations of fraud in the sale and conveyance having been fully denied, a decree setting aside the trustee's deed cannot be properly entered on the ground of failure of the parties to the transaction to disprove such allegations. (p. 389).

3.  Same—*Close Relationship Held Neither Evidence, Proof, nor Badge of Fraud.*

Close relationship between the parties to conveyances by which a creditor's right to resort to his debtor's real estate for satisfaction of his debt, is thwarted, unaided by other circumstances, is neither evidence, proof nor a badge of fraud in the transactions complained of in the bill assailing them. It is a mere circumstance having probative value in connection with others tending to prove fraud. (p. 389).

4.  Equity—*Legally Sufficient Responses in Answer to Interrogatories in Bill, Uncontroverted, Are Taken as True and Evidence for Respondent.*

Legally sufficient responses in an answer, to interrogatories propounded in a bill, are evidence for the respondent, and, if not controverted, are taken as true for the purposes of the cause. (p. 390).

5.  Fraudulent Conveyances—*Application by Insolvent Debtor of All Property to Payment of Debts Not Proof of Intent to Defraud.*

Application by an insolvent debtor, of all of his property to the payment of his debts and necessary expenses, is not proof of intent to defraud a creditor whose debt was not included in the payments. (p. 390).

6.  Witnesses—*Communication to Attorney Held Privileged, Notwithstanding Lack of Charge or Payment for Services Rendered.*

A communication to an attorney, by one to whom he had previously given advice concerning the subject matter of the communication and to whom he was giving advice generally about the legal phases of his business, during a period of time within which the communication was made, is privileged, notwithstanding lack of a charge or payment, for the services rendered. (pp. 386-387).

(Williams, President, absent).

Appeal from Circuit Court, Randolph County.

Suit by M. E. Durkin Donohoe against Fronia H. Collett and others.   Judgment for plaintiff, and defendant Nell Phares appeals.

*Reversed, and bill dismissed.*

*W. B. & E. L. Maxwell,* for appellant.
*A. M. Cunningham,* for appellee.

POFFENBARGER, JUDGE:

The decree under review on this appeal, setting aside a deed, as having been made in fraud of the rights of creditors, and enforcing a judgment lien on the property conveyed by it, is founded upon the theory of duty on the part of close relatives between whom a conveyance has been made, directly or indirectly, which stands in the way of a creditor complaining of it and charging fraud in the execution thereof, to prove good faith in the transaction.   In the opinion of the trial court, there was no admissible evidence of fraud in the record, but, because the debtor and the purchaser of the property, sisters, were charged with fraud in the pleadings and did not prove by their own testimony facts showing such good faith, the final decree is in substance and effect as above indicated.   The grantee has appealed.

The deed in question was not made directly from the debtor to the grantee therein.   It was executed by a trustee in a deed of trust by way of execution of the trust.   Mrs. Fronia H. Collett, the debtor, and Mrs. M. E. Durkin Donohoe, the creditor, had been partners in business,   and the indebtedness is evidenced by a decree in favor of the latter, pronounced May 27, 1916, after long and troublesome litigation, in a suit brought by the former for settlement of the partnership accounts. While that suit was pending, Mrs. Collett borrowed from J. C. Michael $350.00 and secured the debt on the property in question, by a deed of trust in which L. R. Fowler was the trustee.   Professing to have sold it under the deed of trust to Miss Nell Phares, a sister of Mrs. Collett, he conveyed the same to her, by a deed dated, June 24, 1916.   In the original bill, filed Aug. 31, 1916, the deed of trust was not noticed.   The land, about an acre, worth not more than $500.00, was proceeded against as if it were unincumbered.   While the cause was be-

fore a commissioner, under a decree of reference, the debtor filed
an answer disclosing the deed of trust and conveyance by the
trustee.     Thereupon an amended and supplemental bill was
filed, June 8, 1917, making Miss Phares and Michael parties,
and attacking the deed of trust and the conveyance, on the
ground of fraud in both transactions.     It charges there was
no such indebtedness as the deed of trust purports to secure;
that, if there was, it had been fully paid and discharged be-
fore the alleged sale and conveyance; and that Miss  Phares,
Michael and the debtor had conspired with one another to pre-
vent collection of the plaintiff's debt.    A second amended bill
was filed, April 13, 1918, more specifically charging fraud, col-
lusion and conspiracy against the plaintiff, in the transactions
above mentioned, and making Fowler, the trustee, a party.
Answers were filed in which all charges of fraud were fully and
specifically denied..

The indebtedness to Michael, secured by the deed of trust,
was clearly proven by a witness called by the plaintiff, and the
trial court specifically found and held that the deed of trust
was executed in good faith and without fraud.    As the witness
related the facts upon his personal knowledge and is wholly
uncontradicted, this finding cannot be disturbed.

Whether the Michael debt had been paid at the time of the
sale and that transaction and the subsequent conveyance were
mere pretenses, are questions that depend for solution, upon
the admissibility of certain evidence and, if it is admissible,
upon its sufficiency to prove payment.    The evidence of pay-
ment of the debt prior to the sale was held by the trial court to
have been a privileged communication between an attorney and
his client.    J. B. Ward, the witness, was an attorney at law
and represented Michael in the making of the loan to Mrs. Col-
lett.    He examined the title and prepared the deed of trust and
note and the loan was made upon his advice as to the state of
the title.    He testified further that, before the property was
advertised, he prepared and delivered to Michael, at his re-
quest, a release of the deed of trust, which he thinks Michael
signed and acknowledged before him; and that Michael told him
at that time the debt had been paid or was then to be paid.
Upon a second interrogation in chief about the matter, he testi-
fied that Michael had said the debt had been paid.    On cross-

examination, he went back to his first statement.    He further
testified that later, how much later he did not remember,
Michael had told him in a casual conversation, that he intended
to have the trustee sell the property, in order to protect Mrs.
Collett from the debt due from her to Mrs. Donohoe, and also,
that the trustee knew nothing of the release which had not
been recorded.    He admitted that he had been Michael's at-
torney in a general way.    He was frequently consulted, but
generally paid by those with whom his client dealt upon his ad-
vice.    In this state, the rule of privilege between attorney and
client is strict and rigid.    *State* v. *Douglass,* 20 W. Va. 770. If
the relation of attorney and client existed between the parties
to the transaction in question, the communication was clearly
privileged.    The witness had approved the title of the property
and the note and deed of trust for Michael, and prepared a re-
lease.    He did not see the release delivered and was not told
in terms that it had been.    He merely inferred that it had
been from Michael's representation in a subsequent conversa-
tion, that it had not been recorded and the trustee was ignorant
of it.    After preparation and execution thereof, Michael came
back to him and discussed the debt with him again, saying
he had decided to sell the property under the deed of trust for
the debt.    He did not know what period of time elapsed be-
tween the two conversations.    They may have been very close
together, and there is no proof of any clear admission that the
debt had been paid.    Fairly interpreted, the witness' state-
ment was that the creditor said it had been paid or was about
to be.    Whatever the status of the debt may have been, the
creditor was still concerning himself about it, and discussed it
with the witness by whom he had been advised as to it.    Be-
sides, the witness admitted that, at that time, he was advising
Michael generally concerning the legal phases of his business
transactions, but was not always paid by him for the services
rendered.    Whether he was paid or not is immaterial.    His
action in a professional capacity at the time suffices to make
the communication a privileged one.    *Foster* v. *Hall,* 12 Pick.
(Mass.) 89 ; *Hunter* v. *VanBomborst,* 1 Md. 504; *Cross* v. *Rig-*
*gins,* 50 Mo., 335 ; *Denver Tramway Co.* v. *Owens,* 20 Colo. 107.
We are clearly of the opinion that Ward's testimony as to the

admission of payment and purpose of the sale was properly excluded.

The Michael debt having been actual and *bona fide* and payment thereof not having been shown, there was right in the creditor to have the property sold under the deed of trust and in the trustee to make the sale. It is equally clear that Miss Phares could rightfully purchase the property, with her own money and for her own use. According to the averments of the answers, she paid only the expenses of the sale in cash, at the date of the purchase. This amount was credited on what was regarded as the cash installment, $150.75, being about one-third of the purchase money, and, for the balance of that installment, Michael took her note with personal security and she afterward paid it. She also executed to the trustee her two notes for $150.70 each, representing the balance of the purchase money, payable in one and two years, respectively. Thereupon the trustee conveyed the property to her, reserving a vendor's lien by the deed, and assigned the last mentioned two notes to Michael, the creditor. Her brother joined her as surety in one of these notes, if not in both.

These averments are not evidence and do not prove themselves, of course, but they substantially conform to the recitals of the documents assailed, the trust deed and the deed to Miss Phares, and amount to specific and detailed denials of the allegations of fraud. They are explanations consistent with the denials and imparting vigor and strength to them. And they have a basis or foundation in the proved validity of the deed of trust. The recital in the deed of trust of a consideration for the execution thereof, existence of the indebtedness secured by it, may not be evidence against a stranger to it or a creditor assailing it on the ground of fraud. *Cohn* v. *Ward,* 32 W. Va. 34; *Rogers* v. *Verlander,* 30 W. Va. 619; *Knight* v. *Capito,* 23 W. Va. 639; *Bank* v. *Danser,* 70 W. Va. 530; *Butler* v. *Thompson,* 45 W. Va. 660. But its existence has been proved. Under the right thus shown to have been vested in Michael, Miss Phares claims by virtue of the sale under the deed of trust. Her apparent right accrues not by direct conveyance from Mrs. Collett upon a merely recited consideration, but by conveyance from the trustee under a valid deed of trust.

On the face of the matter, her conveyance came not from the debtor but from a third party, the trustee, and it is based ultimately upon a clearly proved and adequate consideration. Hence, it manifestly does not fall within the principle asserted in the decisions above referred to. In the absence of proof of the Michael debt, by a witness introduced by the plaintiff, it might have been necessary for some of the defendants to prove its existence by their own testimony or otherwise.

In view of this situation, the only plausible theory of right of relief in the plaintiff is that of a purchase by Miss Phares, at the trustee's sale, for Mrs. Collett or with money furnished by her. Upon that theory, an entirely different issue arises. A purchaser from the debtor must give himself a status of *bona fide* purchaser by proof of payment of a fair and adequate consideration, for he steps between the creditor and debtor, to the detriment of the former. The creditor has right to charge his debtor's lands, which right the purchaser thwarts. And he may do that by a purchase in good faith, but, when his conveyance is assailed, he must prove payment of consideration. When, however, the sale has been made at the instance of a lien creditor, the situation is altogether different. The conveyance is not made by the debtor and the grantee is under no duty to prove payment of a consideration. The secured debt for which the sale was made constitutes a sufficient basis of right and good faith and relieves the purchaser from the presumption that his conveyance was either voluntary or fraudulent. Nor can any authority be found for the proposition that one who is charged with having purchased for the benefit of the debtor, or with money furnished by the debtor, at a sale to satisfy a lien, must repel the charge by proof, except in the case of a wife who has taken a conveyance from her fraudulent husband or some other person. It is a purely affirmative issue of fraud, unaided by the presumption obtaining in the case of direct conveyance from the debtor, to the prejudice of a creditor, the burden of proof of which obviously rests upon him who asserts it. In the case of a conveyance to the wife of a fraudulent debtor, there is a presumption, on account of the peculiar relation of the parties, that the husband furnished the purchase money, which she must overthrow by proof that she purchased with her own means or means derived from some person other

than her husband.    But that rule does not apply between other relatives.    *Colston* v. *Miller,* 55 W. Va. 496.    In all other cases, close relationship is held to be only a circumstance calling for stricter and fuller proof of payment of adequate considera-. tion and in rebuttal of a *prima facie* case of fraud made by other competent evidence.    *Farmers Transportation Co.* v. *Swaney,* 48 W. Va. 37; *Burt* v. *Timmons,* 29 W. Va. 441; *Watkins* v. *Wortman,* 19 W. Va. 78; *Knight* v. *Capito,* 23 W. Va. 639; *Reilly* v. *Barr,* 34 W. Va. 95; *Ballard* v. *Chewning,* 49 W. Va. 508.    It alone is not a badge of fraud.    *Transportation Co.* v. *Swaney,* cited; *Douglass* v. *Douglass,* 41 W. Va. 13; *Smith* v. *Smith,* 48 W. Va. 51.    To hold that a near relative, other than a wife, purchasing the property of a debtor at a *bona fide* sale, must disprove an allegation of purchase for the benefit of the debtor or of a purchase with money furnished by the debtor, by proof of payment with his own money, would be wholly inconsistent with these general principles.

Nor do the admitted circumstances make out a *prima facie* case of fraud.    The debtor had considerable property after the partnership relation with the plaintiff was created; but, according to her answers to interrogatries propounded in the original bill, she owed debts sufficient in amount to consume practically all of it, which her answer on oath avers she has paid.    It further avers the use of about $800.00 in extraordinary, but necessary, expenses.    An error or false claim of $300.00, in the amount of one of the debts paid, is not a circumstance of any appreciable weight. The debt was $500.00 and the answer put it at $800.00.    That it was paid, the plaintiff herself proved.    There was no effort to controvert these answers, except in the one particular above mentioned, and being responsive to the interrogatories and uncontroverted, they must be taken as true.    They are evidence for the respondent. *Jones* v. *Cunningham,* 7 W. Va. 707; *Shurtz* v. *Johnson,* 28 Gratt 657. Application of a debtor's property to the payment of his debts is no evidence of fraud in favor of a creditor who has not been paid.

In view of these principles and conclusions, we are of the opinion that the decree complained of is erroneous and should be reversed, that the plaintiff's bills should be dismissed with

costs in the court below to the defendants therein, and that costs in this court be awarded to the appellant, Nell Phares, all of which will be adjudged, ordered and decreed.

*Reversed, and bill dismissed.*